# EXHIBIT 2

**TO
THE DECLARATION OF NEIL A. GOTEINER IN SUPPORT OF DASTIME GROUP LIMITED'S AND KONSTANTIN GRIGORISHIN'S PETITION TO CONFIRM FINAL ARBITRATION**

# CONTRACT

THIS CONTRACT is made by and between Dastime Group Ltd, a BVI company (the 'Buyer') and Peter Kiritchenko (the 'Seller') as of the 28th day of June, 2006.

The Seller owns interests in those companies listed in Schedule 1 hereof (the 'Transferred Companies') and the Seller may own, directly or indirectly through his ownership of interests in the Transferred Companies or otherwise, interests, including, but not limited to, shares, participating stakes or other equity, debt and other interests in one or more regional energy distribution companies doing business in the Ukraine (the 'Operating Companies'). The Transferred Companies and the Operating Companies are hereinafter referred to as the 'Businesses'. The Seller acquired his interest in the Transferred Companies in 1995 to 1998 through various co-investments with Buyer or entities related to Buyer. Such investment by Seller totalled at least $42.5 million.

The Seller wishes to sell to the Buyer all of his right, title and interest in and to each of the Businesses pursuant to the terms of this Contract; the Buyer wishes to buy from the Seller all of such interests; each of the Parties wishes to waive and release any and all claims they may have against each other in respect of the Businesses or the ownership thereof; and the Seller wishes to co-operate with the Buyer in the future to retain, secure and protect the rights of the Buyer in the interests in the Businesses.

**NOW THEREFORE**, the parties hereto agree as follows:

1. The Seller hereby sells, transfers and conveys to the Buyer, and the Buyer hereby purchases from the Seller, any and all of the Seller's right, title and interest in and to each of the Businesses, whether such right, title or interest is owned by the Seller of record or beneficially, in bearer or registered form, directly or indirectly, including, without limitation, all of Seller's right, title and interest in and to:

    1.1 any shares or other equity interests in any of the Businesses;

    1.2 any debt or other securities issued or incurred by any of the Businesses;

    1.3 any options, calls, or any other rights to acquire any shares or other equity or debt interest or other interest in any of the Businesses;

    1.4 any rights to vote in respect of, or to control, or to receive dividends or other distributions from or with respect to any of the Businesses; and

1

CONFIDENTIAL-UNDER PROTECTIVE ORDER

MOON03316

    1.5    any securities or other instruments convertible into or exchangeable for any interest referred to in Sections 1.1, 1.2, 1.3 and 1.4.

For the avoidance of doubt, the rights, titles and interests intended and agreed to be sold, transferred and conveyed from the Seller to the Buyer hereunder are the entire economic interest, of whatever kind or description, of the Seller in each and every one of the Businesses, whether known or unknown, wherever located, however evidenced, without exception (Seller's 'Entire Interest').

2.    The Buyer shall pay to the Seller US$ 14.5 million (the 'Purchase Price'), by wire transfer, in immediately available funds, in the amount of the Purchase Price. Such transfer shall be made into the account of Greene Radovsky Maloney Share & Hennigh LLP (the 'Escrowholder'). Escrowholder's wire instructions are set forth in Schedule 3 attached hereto.

    2.1    The Escrowholder undertakes to perform in good faith such duties as are specifically set forth in this Agreement only and shall have no duty under any other agreement or document, and no implied covenants or obligations shall be read into this Agreement against the Escrowholder. The Escrowholder shall incur no liability with respect to any action taken by it or for any inaction on its part in reliance upon any notice, direction, instruction, consent, statement or other document believed by it in good faith to be genuine and duly authorized, nor for any other action or inaction except for its own negligence or wilful misconduct. In all questions arising under this Agreement, the Escrowholder may rely on the advice of counsel, and for anything done, omitted or suffered in good faith by the Escrowholder based upon such advice the Escrowholder shall not be liable to anyone. In no event shall the Escrowholder be liable for incidental, punitive or consequential damages. In particular, in the event of a dispute between Buyer and Seller, Escrowholder shall be entitled to interplead any funds or other documents or property in its possession and to recover its fees and expenses from amounts held by it in escrow, whether before or after such an action is initiated.

    2.2    Buyer and Seller severally, but not jointly, hereby agree, on a 50% / 50% basis, to indemnify the Escrowholder and its officers, partners, employees and agents for, and hold it and them harmless against, any loss, liability or expense incurred without negligence or wilful misconduct on the part of Escrowholder, arising out of or in connection with the Escrowholder carrying out its duties hereunder. This right of indemnification, compensation and reimbursement shall survive the termination of this Agreement, and the resignation of the Escrowholder.

CONFIDENTIAL-UNDER PROTECTIVE ORDER

MOON03317

3. The Seller shall deliver to the Escrowholder all share certificates, whether in registered or bearer form, and all other instruments evidencing ownership of any interest in any of the Businesses, with all appropriate instruments of transfer attached, together with all books and records in his possession or control, including corporate and financial books and records, relating to any of the Businesses. For the avoidance of doubt, the transfer of his Entire Interest from the Seller to the Buyer shall be final and binding upon the Parties and anyone claiming in respect of any of the Parties, regardless of the delivery of any instrument of ownership pursuant to this Section 3. Without limiting the generality of the foregoing, the transfer and other instruments and documents required to be delivered by the Seller to the Escrowholder pursuant to this Section 3 shall include, but not be limited to, those listed in Schedule 2 hereof.

4. Upon the receipt by the Escrowholder of: (i) counterpart copies of this Contract manually signed by each of the Parties, (ii) the Purchase Price referred to in Section 2, (iii) the share certificates and other records and documents referred to in Section 3, and (iv) counterpart copies of a separate Mutual Release in a form agreeable to the parties, manually signed, then the Escrowholder will so notify each of the Parties and shall send to each of the Parties by fax copies of all of such documents held by it. Upon verifying that the documentation held by the Escrowholder is the documentation required by the terms of this Contract, each of the Parties shall instruct the Escrowholder in writing by fax, verified by its counsel, to release (a) the Purchase Price to the Seller, (b) the shares and other documents referred in Section 3 to the Buyer, and (c) the counterpart copies of this Contract and of the Mutual Release to the Parties (the copy signed by the Seller to the Buyer, and the copy signed by the Buyer to the Seller). Upon such release, as so instructed, this Contract and the transactions referred to herein shall become effective and the Escrowholder shall immediately make the transfer of the Purchase Price to the Seller and courier the documents to the Parties entitled to receive the same. If Escrowholder does not receive such instructions from each of the Parties within 10 days of the date of this Contract, it shall, unless otherwise instructed in writing by each of the Parties, return documents or property in its possession to the Party which provided it and resign.

5. If at any time, or from time to time, after the date of this Contract, any evidence of ownership interest in any of the Businesses is or becomes available to the Seller, such evidence of ownership shall forthwith be delivered to the Buyer, with appropriate instruments of transfer attached.

6. The Seller hereby:

   6.1 represents and warrants to the Buyer that he will deliver to the Escrowholder all share certificates, whether in registered or bearer form,

3

CONFIDENTIAL-UNDER PROTECTIVE ORDER

MOON03318

in his possession or control relating to any of the Businesses and all other instruments evidencing any ownership of any interest in any of the Businesses in his possession or control, in each case with all appropriate instruments of transfer as may reasonably be requested by Buyer attached, together with all books and records in his possession or control, including corporate and financial books and records, relating to any of the Businesses;

6.2 represents and warrants to the Buyer that his Entire Interest is owned by the Seller free and clear of any encumbrances of any kind or type;

6.3 represents and warrants to the Buyer that the Seller has not sold or disposed of, or subjected to any encumbrance, any of his interest in any of the Businesses;

6.4 represents and warrants to the Buyer that, to the best of his knowledge, there are no claims of third parties pending, threatened, under investigation or otherwise with respect to the ownership of any Seller's interest in (i) any of the Transferred Companies or (ii) any of the rights or other assets of any of the Transferred Companies;

6.5 represents and warrants to the Buyer that he is the sole legal and beneficial owner of all of the shares and other interest in the Transferred Companies transferred to the Buyer pursuant to the terms of this Contract;

6.6 represents and warrants to the Buyer that, to the best of his knowledge, there are no approvals, consents, licences, permits or other actions or documentation of any third party, including, without limitation, any governmental third party, required to carry out the transactions provided for herein, and that the transactions provided for herein do not and will not breach the laws of any applicable jurisdiction or the rights of any person, firm corporation or other entity;

6.7 acknowledges that, subsequent to the completion of the transactions provided for herein, but subject to his on-going obligations to the Buyer provided for herein, the Seller will have no business relationship with, or ownership interest in common with, the Buyer;

6.8 undertakes to and agrees with the Buyer that the Seller will not at any time after the date hereof sell or dispose of, or purport to sell or dispose of, or to subject to any encumbrance, any interest in any of the Businesses;

For the avoidance of doubt, the Buyer does not represent or warrant to the Buyer that he owns any interest in the Operating Companies, other than indirectly through the Transferred Companies, but, to the extent he does own such an interest it is transferred hereby and is free and clear of any encumbrance.

4

CONFIDENTIAL-UNDER PROTECTIVE ORDER

MOON03319

The Seller shall indemnify and hold harmless the Buyer from any breach of the representations and warranties made pursuant to Section 6, provided however, that notwithstanding anything to the contrary in this Section 6 or any other provision of this contract, the Seller shall in no event be liable or have any indemnification or hold harmless obligation for any breach of representation or warranty if the state of facts or other situation giving rise to such possible claim of breach of representation or warranty was caused by actions of the Buyer, or by any individual or entity related to the Buyer. Moreover, in no event shall any liability of Seller to Buyer exceed the amount of the Purchase Price paid by Buyer.

7. The Seller hereby irrevocably appoints and constitutes the Buyer as his attorney-in-fact to do all things that are reasonably necessary or reasonably desirable, as reasonably requested by the Buyer, effectively to transfer to the Buyer, pursuant to the terms of this Contract all or any part of his Entire Interest, including, without limitation, the execution and delivery of instruments of transfer and evidence of ownership interest in any of his Entire Interest.

8. The Seller hereby undertakes and agrees to take or forebear from taking all action, and to do or forebear from doing all things, as may be reasonably requested by the Buyer to effectuate and support the Buyer's claim to ownership of 100% of the Transferred Companies and, through the Transferred Companies, his ownership interest in the Operating Companies. The Buyer shall reimburse the Seller for all of the Seller's reasonable out-of-pocket expenses in carrying out his obligations pursuant to this Section 8. Such expenses shall be advanced to Seller prior to the expenses being incurred (with any excess advance returned to Buyer and any shortfall made up by Buyer). The Buyer agrees to provide Seller with assistance that Seller may reasonably request should Seller need it in connection with the tax treatment of the transaction effected by this Contract.

9. Each of the Parties, on behalf of himself, his heirs and assigns, and related entities and individuals hereby waives and releases the other Party, his agents, attorneys, heirs and assigns, and related entities and individuals, from any and all claims of any kind or description that he (or they) may have against such Party, its agents, attorneys, heirs and assigns, and related entities and individuals, relating in any way to any of the Businesses or any interest in any of the Businesses, whether known or unknown and whether choate or inchoate, including, without limitation, any claim of the Seller, his heirs or assigns or any entity related to the Seller relating to (i) his investment in the Businesses as referred to in the preamble to this Contract or otherwise, or (ii) any loan or purported loan or other investment or advance made by the Seller to the Buyer, or one or more entities or individuals related to the Buyer, relating to his or its purchase of an interest in the any of the Businesses, or (iii) any transfer or alleged transfer of rights or assets out of any of

5

CONFIDENTIAL-UNDER PROTECTIVE ORDER

MOON03320

the Transferred Companies, save for those rights and obligations provided for in this Contract. Each of the Parties intends to release claims of which they may presently be unaware (except for claims under this Contract) and expressly waives any rights under California Civil Code Section 1542, which provides as follows:

"A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

10. This Contract shall be governed by the laws of the State of California, without giving effect to any conflict of law provisions of such law. Any dispute between the Parties arising out of or relating to this Contract shall be resolved by binding arbitration. This arbitration clause shall be deemed to be an agreement independent of the other terms of this Contract. Any arbitration shall be conducted in San Francisco, California before a single arbitrator pursuant to the rules of the Judicial Arbitration and Mediation Services ('JAMS'), and the award or other final determination of such arbitrator shall be final and binding upon the Parties. Any award of the arbitrator may be executed in any court of competent jurisdiction. The Parties agree that specific performance of this Contract shall be one of the remedies available in any arbitration. For the purposes of enforcing this arbitration clause, or enforcing any arbitration award, the Parties consent to the jurisdiction and venue in the state and federal courts located in California. The award of the arbitrator shall also be enforceable in any court having jurisdiction over the Party against whom the award has been rendered, or where assets of such Party are located, and the Parties waive any objections to the action based upon lack of jurisdiction or inconvenient forum.

11. Each of the Parties agrees to keep the existence of this Contract, and its terms and contents, strictly confidential, except as may be required by applicable law. If one Party believes that any disclosure otherwise prohibited by this Section 11 must, pursuant to applicable law, be made, it shall immediately inform the other Party and co-operate, to the extent permitted by applicable law, with such other Party to limit or prevent such disclosure.

12. This Contract, including the Schedules hereto, constitutes the entire agreement of the Partiea with respect to the subject matter hereof and supersedes all written and oral representations of the Parties or their representatives concerning the subject matter hereof. Neither Party is relying upon any representation that is not contained herein. Each Party has had the opportunity to have input into the wording of this Contract, so any ambiguities in the Contract shall not be construed against a Party by reason of such Party having drafted the Contract.

6

CONFIDENTIAL-UNDER PROTECTIVE ORDER

MOON03321

13.. This Contract may be executed in counterparts, each of which shall be deemed an original.

**IN WITNESS WHEREOF** the Parties have executed this Contract as of the date first above written.

DASTIME GROUP LTD

By _____[signature]_____         _____
   the Buyer                          Peter Kiritchenko, the Seller
[signature: Artyushina Aelita]

AGREED:

Greene Radovsky Maloney Share & Hennigh LLP
(as Escrowholder only)

By _____[signature: Ronald ...]_____
   a Partner

7

CONFIDENTIAL-UNDER PROTECTIVE ORDER

MOON03322

IN WITNESS WHEREOF the Parties have executed this Contract as of the date first above written.

DASTIME GROUP LTD

By _____   _____
         the Buyer    Peter Kiritchenko, the Seller

AGREED:

Greene Radovsky Maloney Share & Hennigh LLP

(as Escrowholder only)

By _____
         a Partner

SCHEDULE 1

TRANSFERRED COMPANIES

1. Contrast Holdings Ltd., a BVI company, registration #204921

CONFIDENTIAL-UNDER PROTECTIVE ORDER                                    MOON03323

<b>SCHEDULE 1</b>

<b>TRANSFERRED COMPANIES</b>

1. Contrast Holdings Ltd., a BVI company, registration # 204921
2. Cape Trading Ltd., a BVI company, registration # 193423
3. Court Holdings Ltd., a BVI company, registration # 180091
4. Jagger Services Ltd., a BVI company, registration # _____
5. Orlick Enterprises Ltd., a BVI company, registration # 204915
6. Paddox Industries Ltd., a BVI company, registration # _____
7. Puma Trading Holdings Ltd., a BVI company, registration # 249458

8

CONFIDENTIAL-UNDER PROTECTIVE ORDER                              MOON03324

SCHEDULE 2

1. Protocol 2/11/98 signed by Messrs. Grigorishin and Kiritchenko in Germany.

2. Protocol 2/20/98 signed by Messrs. Grigorishin, Kiritchenko and Vartanian in Moscow.

3. Protocol 3/29/01 signed by Mr. Kuida in Moscow and Mr. Kiritchenko in U.S.

4. Protocol 7/31/02 signed by Mr. Kuida in Moscow and Mr. Kiritchenko in U.S.

5. Bearer Share Certificate for 51 shares in Jagger Services Limited; Acknowledgement of purchase of same by Mr. Kiritchenko, signed by Mr. Vartanian 11/25/96.

6. Bearer Share Certificate for 51 shares of Orlick Enterprises Limited; Acknowledgment of purchase of same by Mr. Kiritchenko, signed by Mr. Vartanian 11/25/96.

7. Bearer Share Certificate for 51 shares of Contrast Holdings Limited; Acknowledgement of purchase of some by Mr. Kiritchenko, signed by Mr. Vartanian 11/25/96.

8. Three Bearer Share Certificates for 21 shares (10, 10, 1) of Court Holdings, Ltd; Acknowledgement of purchase of 51 shares by Mr. Kiritchenko, signed by Mr. Vartanian 10/11/96; Stock Transfer Form reflecting transfer of 51 bearer shares to Mr. Kiritchenko 10/11/96; Protocol (Minutes) 9/28/96 signed by Messrs. Grigorishin, Vartanian and Kiritchenko.

9. Certification of Incorporation for Paddox Industries Limited (BVI) 5/16/96; Certificate of Incumbency showing Peter Kiritchenko as sole shareholder 8/8/96; Protocol (Minutes) 8/26/96 signed by Messrs. Kiritchenko and Grigorishin; 24 bearer share certificates for 24 shares.

CONFIDENTIAL-UNDER PROTECTIVE ORDER

MOON03325

**SCHEDULE 3**

| | |
|---|---|
| ACCOUNT NAME: | Green Radovsky Maloney & Share LLP<br>Attorney Trust Account |
| ACCOUNT NUMBER: | 911-0008-8830 |
| BANK NAME: | First Republic Bank |
| ROUTING NO: | 3210 81669 |
| ADDRESS: | 101 Pine Street<br>San Francisco, California 94111 U.S.A.<br>Preferred Banking<br>Attention: Athena Hilario Palisoc<br>(415) 296-3590 P<br>(415) 296-3509 F |

10

CONFIDENTIAL-UNDER PROTECTIVE ORDER

MOON03326